## Case No. 4,976.

FOSTER v. LINDSAY et al.

[2 Ban. & A. 172; 3 Dill. 126; 8 O. G. 1032; 2 Cent. Law J. 769; 23 Pittsb. Leg. J. 107.] [1]

Circuit Court, E. D. Missouri.   Oct. 28, 1875.

Hatch & Parkinson, for plaintiff.

G. B. Kellogg and Mr. Holmes, for defendants.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. 23 Pittsb. Leg. J. 107, contains only a partial report.]

TREAT, District Judge. This is a suit in equity under section 4918 of the Revised Statutes of the United States, concerning alleged interfering patents. The defendant's patent [No. 149,589] was prior in date to plaintiff's; also the application therefor. The plaintiff claims that the invention was by him; that he had, previous to any knowledge thereof by the defendant, not only invented the patented composition, but actually reduced it to a practical and successful test; that he had shown to the defendant the manufactured article, and when, as their foreman in the brick business, he was consulted thereafter about manufacturing firebrick by means of which they could obtain a large and profitable order, he called their attention to the fact that he had exhibited to them before entering upon their service, a specimen brick of the needed quality; that thereupon he as their foreman directed various experiments to be made at defendant's brick yard; that when the defendant suggested subsequently that they proposed to obtain a patent for that mode of making an improved fire-brick, he remonstrated against their doing so, claiming that he was the original inventor, and alone entitled to a patent if one was obtainable.

On the other hand, the defendant claims that it was only after a series of experiments under his direction and supervision, in his own establishment, that the success of the mode patented was ascertained.

Without analyzing the testimony with the view of determining whether the plaintiff in his isolated experiment, prior to entering into the service of defendants, had invented the patented mode of securing the desired result, or had merely experimented so far as to ascertain that the use of sand-rock would furnish the needed glazing in his pottery business, and without enquiring further whether he had not abandoned all purpose of pushing his experiments to ultimate success for fire-bricks, and also without determining to what extent he and the defendant respectively suggested the experiments made in the defendant's establishment which first resulted in an ascertained and definite value from the compound, whereby the rights of the respective parties as employer and employé would arise, we will first consider the true construction of the act of congress. The language of the section is peculiar, and the object designed by it is not free from doubt. The section is as follows:

"Wherever there are interfering patents, any person interested in any one of them, etc., may have relief against the interfering patentee and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice, may adjudge and declare either of the patents void in whole or part, or inoperative or invalid in any particular part of the United States, according to the interest of

the parties, etc. But no such judgment or adjudication shall affect the right of any person except the parties to the suit," etc. Rev. St. § 4918.

So far as known this section. has not received any express adjudication. In Mowry v. Whitney, 14 Wall. [81 U. S.] 434, an allusion is made to a somewhat similar provision in the act of 1836 [5 Stat. 123]. The latter act in the section referred to covered two distinct classes of cases, viz: 1st, where there were interfering patents; and 2d, where the examiners refused to issue a patent applied for, on the ground of interference with a prior patent. In each of those cases a bill of equity would lie at the instance of either of the parties, and the court could determine in the latter class of cases whether the applicant should have a patent issued to him; and in the former, might adjudge either of the patents void in whole or in part, etc.

In ordinary cases, where a patentee brings suit for infringement, the defendant can assail the validity of the patent in the manner prescribed; and the decree of the court is binding on the parties. It is contended that, inasmuch as this suit is not for an infringement, the defendant must be confined to the respective merit or claims of the patentees inter sese, irrespective of the validity of either. The defendant in this case, among other defences, has set up that the patented compound or process had been anticipated and in use before either of the interfering patents had been claimed or issued. The evidence fully establishes the fact. In a suit for an infringement, a defence for want of novelty would, under the evidence in this case, be successful, whether the one or the other of the interfering patents was the basis of the action. The case of Mowry v. Whitney [supra] goes no further than to hold that if a patent is to be annulled ab initio, the proceeding must be at the direct instance of the government. but it does not decide that the question between conflicting patents may not be fully and finally determined as to the parties to suit for interfering patents.

The plaintiff in this case contends that he has the prior and better right. although his application and patent are of subsequent date, and that the court is bound to adjudicate solely as between his and the interfering patent, leaving one of the patents to stand for subsequent adjudication when assailed in a proper suit.

The act of congress provides for a suit in equity against the owners of the interfering patent for such relief as equity would furnish. If the action stopped there, would a court of equity grant relief to a complainant who had no equity? If it would not. could not the court enquire through proper pleadings and evidence. into the equities of the complainant? But the section proceeds to authorize the court to adjudge either of the interfering patents void in whole or part. If it adjudged the plaintiff's patent void, should not a decree to that effect be entered, instead of a simple decree dismissing his bill? If it ascertains that the defendant's patent is void, and the plaintiff's also, must the decree be restricted to a judgment against the defendant's patent, leaving the plaintiff's patent as if in full force and of established validity; so that if a new suit were brought by the same plaintiff against the same defendant for an infringement of plaintiff's patent, the defendant would then for the first time be able to dispute the validity of plaintiff's patent for want of novelty, etc.? Why two suits between the same parties to adjust the controversies between them, when one suit would accomplish the end according to the well-known purposes of equity proceedings? Unless the terms of the statute restrict the court, sitting in equity, so that it can not do full and complete justice between the parties and end the litigation between them, it would seem to be its duty to pass upon the whole controversy when fairly and fully presented. The statute says that the court may adjudge either void in whole or part. How can it do so, consistently with law and equity, unless each of the patents is under consideration in all respects? It may conclude that in some respects there is an interference. and in others none, so that the decree would be only for an annulment in part; or it may decree that there is an interference in toto, and consequently annul one of the interfering patents, leaving the other to stand as valid. But what would be the position of one who had previously used the patent declared void, when suit was subsequently brought against him by the other patentee for an infringement? Could he assail the validity of the patent which had already, as between the same parties, been adjudged, at least impliedly, to be valid? It seems that the suits in equity authorized in cases of interfering patents should not be restricted to the narrow limits urged. The controversy is between two patentees or those claiming under them. If neither has a valid patent. the court should adjudge both void, and thus end the strife. It is on this theory that the defendant was permitted to set up in his answer the lack of novelty, not of plaintiff's patent alone, but of his own. True, he might voluntarily have surrendered his patent, and contested the p'aintiff's right in a suit for infringement; but why should he not, when sued, insist upon a full defence, whereby a second suit could be avoided? The power vested in the court to adjudge either of the interfering patents void, in whole or part, is held to confer full authority, where the evidence justifies, on issues fairly made, to decree, not one of the patents alone. but both, to be void. The court so adjudges in this case. and the decree will be accordingly at the costs of the plaintiff. Decree accordingly.